IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KENNETH BERNARD WEBB                                                  PLAINTIFF

VS.                                      CIVIL ACTION NO. 3:22-cv-348-CWR-FKB

KILOLO KIJAKAZI,
COMMISSIONER OF SOCIAL
SECURITY                                                DEFENDANT

**REPORT AND RECOMMENDATION**

**I. Introduction**

Kenneth Bernard Webb filed applications for a period of disability, disability insurance benefits, and supplemental security income with the Social Security Administration ("SSA") on October 4, 2019, alleging an onset date of September 15, 2019. [10-1] at 16; *see also id.* at 251, 253. After his applications were denied initially and upon reconsideration, he requested and was granted a hearing, which was held by video conference on September 8, 2021, before an administrative law judge ("ALJ"). *Id.* at 34-58. On October 6, 2021, the ALJ issued a decision finding that Webb was not disabled, *id.* at 16-23, and the Appeals Council subsequently denied review. *Id.* at 2-4. Plaintiff is represented by counsel and has brought this appeal pursuant to 42 U.S.C. § 1383(c). [1] at 1.

The parties have filed their briefs, and this matter is ripe for review. *See* [12], [14], [17]. Having considered the memoranda of the parties and the administrative record, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings.

## II. Facts and Evidence

Webb was born on February 15, 1968 and was 53 years old at the time of the ALJ's decision. [10-1] at 23, 276. In his October 2019 application, he alleged that he is disabled due to his back. *Id.* at 281. He reported that he is five feet, eight inches tall, and weighs 240 pounds. *Id.* He reported that he had two years of college and specialized training in air conditioning repair. *Id.* at 282. He worked as a warehouse manager at a garage door company for several years, as a material handler/sorter at a recycling company, and as a buffer. *Id.*

His back issues date back to November 2013, when he was involved in an on-the-job forklift rollover accident. *Id.* at 384. At that time, he suffered fractures of the "11th and 12th ribs with multiple transverse and spinous process fractures throughout the lumbar spine," along with a compression fracture at L2. *Id.* Initially confined to a wheelchair, he suffered an abscess in his back, which eventually healed after treatment. *Id.* at 384-386. He improved to walking with a cane and returned to work, but was treated for low back pain in the years following. *Id.* at 386-387. On April 8, 2018, he slipped and fell while shopping. *Id.* at 387. A CT scan and MRI showed degenerative changes in the lower lumbrosacral spine, and he was diagnosed with a "closed fracture of lumbar vertebra without spinal cord injury." *Id.* An April 23, 2018 MRI of his lumbar spine with and without contrast showed "[p]osttraumatic and degenerative changes at multiple levels." *Id.* at 388; *see also* [10-5] at 113. The MRI indicated mild disc bulges with degenerative facet changes throughout his lumbar vertebrae. [10-5] at 113. And at L5-S1, the MRI showed "[m]arked posttraumatic and degenerative hypertrophic facet changes with moderate to severe right foraminal narrowing and moderate left foraminal narrowing. No significant canal narrowing." *Id.*

Following a course of physical therapy (showing no improvement) and facet injections at L3-S1, Webb underwent a functional capacity evaluation by Devin Pack, MPT, on August 2, 2018. [10-1] at 364-381, 389; [10-4] at 61. Pack reported that Webb's "[s]elf-limiting performance was a factor with 50% of work postures/movements/tasks due to client's report of pain." [10-1] at 371. Pack also noted that "significant self-limiting and inconsistent behavior heavily influenced test results." *Id.* Pack concluded that Webb could tolerate a sedentary level of work, with the caveat that Webb's "tolerance for the 8-hour day was significantly influenced by the client's self-limiting and inconsistent behavior and indicates his minimal rather than his maximal ability." *Id.*

At the request of Plaintiff's attorney, Howard Katz, M.D., conducted an independent medical examination ("IME") of Webb on December 27, 2019. *Id.* at 382-394. After examining his medical records and performing an examination of Webb, Dr. Katz concluded that Webb has "significant impairment from his November 21, 2013, injury," with a "9% impairment to the body as a whole," with 2% attributed to the April 2018 slip and fall injury. *Id.* at 390. Katz concluded that Webb is capable of performing "all light and sedentary activities. . . . with exerting up to 20 pounds of force occasionally, 10 pounds of force frequently, and 5 pounds of force constantly if he is able to have adequate healthcare including the facet joint injections." *Id.* Dr. Katz concluded that Webb reached maximum medical improvement on or about September 21, 2018. *Id.* The doctor anticipated that Webb needs a home exercise program, lumbar facet injections at L3-S1 at the rate of three to four per year, along with lumbar facet ablations every one to two years. *Id.* at 391.

Webb was treated at an emergency room for lower back pain on March 22 and 27, 2021, with one of those visits following a motor vehicle accident. *Id.* at 475-484; [10-6] at 254-259. On both occasions, he was treated and discharged the same day. *Id.* During his March 22 emergency room visit, he reported that his lower back pain had flared in the preceding days. [10-1] at 481. Medical personnel prescribed topical and oral pain medications. *Id.* at 483. At his March 27 emergency room visit following an automobile accident, he was given the NSAID ketorolac, and his prior prescriptions for topical and oral pain medications were noted. [10-6] at 254-257.

### III. The Decision of the ALJ

In evaluating Plaintiff's claim, the ALJ worked through the familiar sequential evaluation process for determining disability.[1] The ALJ found that Webb meets the insured status requirements of the Social Security Act through December 31, 2023 and has not engaged in substantial gainful activity since September 15, 2019. [10-1] at 18. The ALJ found that Webb

---

[1] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

    (1)    whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

    (2)    whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

    (3)    whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

    (4)    whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

    (5)    whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. § 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining her burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

4

has the severe impairments of history of lumbar compression fracture; lumbar spondylosis and facet arthropathy; and obesity. *Id.* at 18.

At step three, the ALJ concluded that Webb does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 19. The ALJ concluded that Webb's degenerative disc disease does not meet Listings 1.15 or 1.16. *Id.* The ALJ observed that Webb has a BMI of 38, and that he is obese, but there is no Social Security Listing for obesity. *Id.*

After considering the record, the ALJ determined that Webb has the residual functional capacity ("RFC") to perform the full range of light work. *Id.* To reach a conclusion about RFC, the ALJ reviewed, *inter alia*, Plaintiff's testimony, his medical records, the August 2018 functional capacity evaluation by David Pack, MPT, and the IME performed by Dr. Howard Katz in December 2019. *Id.* at 21. The ALJ made no reference to Webb's April 2018 MRI and CT test results. *Id.* at 20-21. The ALJ found as "not persuasive" Pack's conclusion that Webb could perform sedentary work because it was authored before the alleged onset date, and it was inconsistent with Dr. Katz's evaluation that occurred during the relevant time period. *Id.* at 21. The ALJ also observed Pack's conclusion that Webb "self-limited on 50% of tasks," as well as that it was inconsistent with Webb's examinations at ERs during the relevant period. *Id.* The ALJ found Dr. Katz's opinion to be "persuasive" because it was supported by his examination findings. *Id.*

Thus, the ALJ concluded that Webb is capable of performing his past relevant work as a warehouse manager, which, according to the vocational expert and the Dictionary of Occupational Titles, is normally performed at the light exertional level. *Id.* at 22. The ALJ

noted, however, that Webb performed his prior job of warehouse manager at the "very heavy" exertional level. *Id.* Even so, considering Webb's age on the alleged onset date (51, "an individual closely approaching advanced age"), his education (at least high school), work experience, and the Medical-Vocational Guidelines, the ALJ concluded that Webb was not disabled from September 15, 2019, through the date of the decision, October 5, 2021. *Id.* at 22-23.

## IV. Standard of Review

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006). *Accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this Court. *Paul v.*

*Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

### V. Discussion

Plaintiff argues that the ALJ's decision should be reversed on three grounds:

(1) The ALJ erred in her analysis of the medical opinions in this present case.

(2) The ALJ erred by failing to order a Consultative Examination and, thereby, failed to adequately develop the record.

(3) The the ALJ erred when she failed to properly consider all of the evidence of the record.

[12] at 3.

Plaintiff first argues that the ALJ failed to sufficiently explain her analysis of the factors of "supportability" and "consistency" when discussing the medical opinions. In particular, Webb points out that although Dr. Katz found that he could perform all light and sedentary activities, the ALJ did not analyze whether Katz's assessment was consistent with the SSA's regulatory definitions of those terms. Furthermore, he asserts that because Katz made no assessment of his ability to walk and stand, the ALJ's finding that he can perform light work has no basis in the medical record, especially considering that he has a degenerative condition. *See* [10-1] at 390.

Even with the recent changes in the SSA regulations regarding the evaluation of medical evidence,[2] reviewing courts "will now look first and foremost simply to whether substantial evidence exists to support an ALJ's opinion and not whether one opinion was correctly weighted in relation to any other(s)." *Webster v. Comm'r*, No. 3:19-cv-97-DAS, 2020 WL 760395, *3

---

[2] In 2017, the Social Security Administration revised its regulations on the evaluation of medical evidence. The revised regulations are applicable to claims filed on or after March 27, 2017. *See* 20 C.F.R §§ 404.1520c, 416.920c. Plaintiff filed his claims after that date, therefore the revised regulations apply.

7

(N.D. Miss. Feb. 14, 2020), *aff'd*, 19 F.4th 715 (5th Cir. 2021).  Although the ALJ has the power to evaluate a claimant's RFC, the evaluation must be based on medical opinions.  *See Rudis v. U.S. Comm'r, Soc. Sec. Admin*, No. 6:20-cv-13, 2020 WL 7974323, *8 (W.D. La. Dec. 9, 2020).

While the ALJ found Katz's opinion to be "persuasive," the doctor's opinion did not address Webb's ability to stand or walk, and a full range of light work could require him to stand or walk up to six hours in a an eight-hour workday.  *See* SSR 83-10, 1983 WL 31251, at *6 (stating that a full range of light work requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.")  And although Katz's opinion cleared Webb for "light and sedentary" work, the ALJ failed to analyze whether Katz's use of those terms of art was consistent with the SSA's definitions.  Having discounted the opinions of state agency medical consultants and the physical therapist Pack, the ALJ failed to cite any basis in a medical opinion for her conclusion that Webb can sustain the walking and standing requirements of light work.  Although the government argues that he continued to work after he fell in April 2018, Katz observed that Webb did not work for nearly six months following his injury, and Plaintiff testified that he could no longer meet the physical requirements of the job, including its demands for walking and standing.  [10-1] at 52, 383; *see also Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)(finding plaintiff's testimony, without treating physician report, as insufficient basis for RFC).  Accordingly, the Court finds that the lack a physician's opinion regarding Webb's functional ability to stand and/or walk during the workday constitutes grounds for remand.

Further, the Fifth Circuit imposes a duty on an ALJ "to develop the facts fully and fairly relating to an applicant's claim for disability benefits."  *Ripley*, 67 F.3d at 557.  "If the ALJ does not satisfy his duty, his decision is not substantially justified."  *Id.*  A failure to fulfill the duty to

8

develop the record, however, 'is not reversible error unless the claimant is prejudiced." *Webster*, 19 F.4th at 720. An ALJ's failure to order a consultative examination to resolve "gaps in the record" can constitute prejudicial error. *See Hardine v. Kijakazi*, 2022 WL 2070399, at *2 (5th Cir. June 8, 2022) (finding that the Commissioner's failure to order a consultative examination was prejudicial error because a consultative examination could have clarified functional limitations and resolved lack of medical evidence in the record).

In this case, the Plaintiff established his severe impairments of lumbar compression fracture, lumbar spondylosis and facet arthropathy, and obesity, as recognized by the ALJ, and for which there is ample medical evidence. There is no medical opinion, however, as to the extent that his severe impairments affect his functional capabilities to stand and/or walk during the workday. Had the ALJ ordered a consultative examination, with a corresponding functional capacity evaluation and related scans and/or testing, the ALJ "could and would have adduced evidence that might have altered the result." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). Accordingly, Plaintiff has established prejudice, and remand is warranted.

## VI. Conclusion

Accordingly, for these reasons, the undersigned recommends that the decision of the Commissioner be reversed and remanded for further proceedings consistent with this Report and Recommendation.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy[3] shall bar that party, except upon

---

[3] Where a document is served by mail, the party is considered to have been served on the date the document is mailed by the Court. *See* Fed. R. Civ. P. 5(b)(2)(C).

grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

RESPECTFULLY SUBMITTED, this the 27th day of July, 2023.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE